GLICKSTEIN, Judge.
The trial court concluded that the action of the insurance agent estopped the insurer from denying coverage to appellee for the accident here involved. We agree that there is substantial competent evidence upon which to base such conclusion and affirm.
The relevant facts in this action for declaratory judgment that could have been found by the trial court were those to which appellee testified:
Q. Would you explain to Judge Fine why you decided to contact Milton Carpenter’s Agency when the new station wagon was purchased?
A. Paul Komya and Bernadette, both employed by Milton, were customers of *1261 mine in the store. Milton Carpenter was a member of the Masonic Lodge out there, as was I, and being a businessman in Belle Glade, I thought it was appropriate that I do business with the businessmen out there.
I had been insured by U.S.A.A. since my Air Force Services. They had been a good company. I had no reason to change up until that point. So, at that point, I decided that all my new vehicles would be insured through Milton Carpenter.
Q. And you contacted Paul Kornya?
A. I did.
Q. To your knowledge, Paul Kornya was employed by the Carpenter Agency?
A. He was.
Q. And you knew Paul personally?
A. I did.
Q. Did you have a meeting with him?
A. I did.
Q. Would you tell and explain to Judge Fine in your own words what conversations you can remember about that meeting with Paul Kornya?
A. Well, the conversation was kind of rambling because Paul has been a friend of mine for some time. I’ll try to confine it about what we discussed about the car insurance.
I told him that I wanted the Hughes’ vehicles covered as if these were personal vehicles. He wanted to know who owned the corporation. I told him there is not other persons, that I owned the corporation. So, he said you’re covered. Then we went off to discuss Hugo and Sheila. That was my concern, whether they would be covered if they drove the vehicles, because they did drive the vehicle, being the station wagon.
He told us that Penny and I were, no question about it. He said that Sheila and Hugo would be covered under any circumstances related to store business.
Earlier the same witness had testified as follows:
Q. So, it’s certainly a true statement that the vehicles were not just used for personal use, neither the station wagon nor the van, were used just for personal reasons, for you and your wife?
A. That’s correct.
Q. One of your concerns that was expressed to Mr. Kornya at the time that the policy was initially taken out was to make sure that your wife, Penny, would be covered since she was driving almost a hundred miles a day to and from Palm Beach Gardens in that vehicle, correct, in the station wagon?
A. That’s correct.
Q. And that was one of the things that you remember specifically saying that you wanted her covered while she was driving back and forth?
A. Yes, I do remember that is one of the things I talked about. I wanted Hughes Pharmacy, me and Penny covered as if they were personal cars, and I intended to transfer our insurance from U.S.A.A. to the local company, as the cars were discarded.
Q. Do you have any recollection of ever discussing with the insurance agent the stock ownership of Hughes Pharmacy, Inc?
A. Ido.
Q. What recollection do you have?
A. He wanted to know who owned the corporation and I told him Penny and I owned it exclusively, and he said, well, you don’t have any problem.
Subsequently, while jogging, Mr. Hughes was struck by a vehicle which was drag racing; and he incurred substantial medical expenses. He would have been insured for the accident with the policy he owned before doing business with the agency involved here; and he would have been covered by a personal policy. .
The facts in this case are surely not the same as those in Liberty Mutual Fire Insurance Company v. Sanderman, 286 So.2d 254 (Fla. 3d DCA 1973), but there are comparable principles. The insured here *1262 received a corporate policy, not a personal policy. We realize that he should have read it; but we also agree with the court’s following statement in Sanderman:
The insureds’ failure to read their policy in this case does not preclude them from claiming a conflict between the policy and the coverage desired. See Blumberg v. American Fire & Casualty Co., Fla.1951, 51 So.2d 182.
Id. at 256. There the insureds assumed, as did appellee here, that they were receiving what they had desired, and did not learn to the contrary until the casualty occurred. There, as here, the agent had not pointed out to the insureds that they were not receiving what they desired. The agent here remembers nothing of the conference; and his notes are so sparse as to be of no help to him or the court in explaining his understanding of what the client requested.
GUNTHER and STONE, JJ., concur.